RECEIVED
2022 APR 9: 20
US COURT OF APPEALS
FEDERAL CIRCUIT

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### INFORMAL BRIEF OF APPELLANT

**Case Number:** 2022-1267

**Short Case Caption:** Golden v. Google LLC

**Name of Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case before this court? ☑ Yes ☐ No
   If yes, state the name and number of each case.

   > Case No. 2022-1196 Golden v. US
   > Case No. 2022-1229; Golden v. Apple Inc.

2. Did the trial court incorrectly decide or fail to take into account any facts? ☑ Yes ☐ No
   If yes, what facts?

   > 35 U.S.C. 281. REMEDY FOR INFRINGEMENT OF PATENT. "A patentee shall have remedy by civil action for infringement of his patent."
   >
   > 35 U.S. Code § 271. (a)-[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. (b)-Whoever actively induces infringement of a patent shall be liable as an infringer. (c)-Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent...

RECEIVED
MAR 0 3 2022
United States Court of Appeals
For The Federal Circuit

3. Did the trial court apply the wrong law? ☑ Yes ☐ No
   If yes, what law should be applied?

> According to the United States District Court District of South Carolina, "if the prose plaintiff fails to procedurally state a claim, it is the responsibility of the Judges of this court [to] outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case", See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975)
>
> Even after Twombly and Iqbal, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', [e]ven if their truth seems doubtful." (quoting Twombly, 550 U.S. at 556).
>
> At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (quoting Crypto Res., LLC v. Assa Abloy, Inc., 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017))
>
> In Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the FRCP do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" Id. at 1350 (quoting In re Bill of Lading, 681 F.3d 1323, 1339 (Fed. Cir. 2012).
>
> "In light of his pro se status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint …See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

4. Did the trial court fail to consider important grounds for relief?
   ☑ Yes ☐ No
   If yes, what grounds?

> 35 U.S.C. § 282 establishes a presumption of patent validity that an alleged patent infringer must overcome by clear and convincing evidence in all circumstances.
>
> On June 9, 2011, the U.S. Supreme Court issued its much-anticipated decision in Microsoft v. i4i. At issue was whether patents would continue to enjoy a strong presumption of validity during litigation. More specifically, whether the clear and convincing evidence standard necessary to invalidate a patent would be overturned.
>
> Microsoft had challenged that standard; arguing that a lower standard of "preponderance of the evidence" should be sufficient. The Supreme Court unanimously rejected Microsoft's argument and affirmed the Federal Circuit's long-standing strong presumption of proof. As a result, the clear and convincing evidence standard remains.
>
> The Trial Court fail to consider the presumption of validity of Plaintiff-Appellant's patents.

5. Are there other reasons why the trial court's decision was wrong?
   ☑ Yes ☐ No
   If yes, what reasons?

> All of Plaintiff-Appellant's inventions has "use" and are not frivolous. "A frivolous invention is an invention with no use. U.S. patents are only granted for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" (35 USC 101).
>
> Plaintiff-Appellant's fourteen (14) inventions assembled as a CMDC Device (i.e., smartphone, laptop, smartwatch, new and improved cell phone, etc.); with the "secondary" inventions designed and developed to be integrated within the CMDC, are:
>
> 1-Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent. 2-Central Processing Units for CMDC Device – Claim 5 of the '287 Patent. 3-Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent. 4-Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent. 5-Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent.  6-Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent. 7-NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent. 8-Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent. 9-Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent. 10-Fingerprint/Face Recognition for CMDC Device – Claim 1 of the '619 Patent. 11-Stall, Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent. 12-Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent. 13-Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent. 14-Internet-of-Things with CMDC Device – Claim 11 of the '619 Patent.

6. What action do you want this court to take in this case?

Plaintiff -Appellant has stated a plausible claim for direct infringement by specifically identifying the Defendant's products and alleging that they perform the same unique function as Plaintiff-Appellant's patented inventions. The Defendant in this case is allegedly liable for infringement of the asserted patents-in-suit under 35 U.S.C. § 271.

As set forth in Plaintiff-Appellant's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff-Appellant's CMDC device have at a minimum directly infringed the '287, '439, & '189 patents and Google is thereby liable for infringement of the '287, '439, & '189 patents pursuant to 35 U.S.C. § 271. Google have caused damage to Plaintiff-Appellant, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

Date: 03/02/2022

Signature:

Name: Larry Golden

Pursuant to the Federal Circuit's "ORDER", in *Golden v. Google LLC.*, Case No. 22-1267; Dkt. No. 8; filed 02/17/2022, Plaintiff-Appellant is submitting this corrected informal brief, not to exceed 30 pages.

This Motion is in compliance with FEDERAL RULE OF APPELLATE PROCEDURE 32: Briefs: (a)(4)(5)(6) & (7)(A) not to exceed 30 pages.

This dismissal is in favor of the Defendant, Google LLC; on grounds independent of the underlying merits of the action (e.g., the Plaintiff-Appellant's infringement claims; the validity of Plaintiff-Appellant's asserted patents and patent claims; and, the Defendant's merits-based defenses).

"Accordingly, the Report recommend dismissal of Plaintiff's complaint because *inter alia* the Plaintiff's complaint contains a lengthy history of his prior actions in this Court… but contains few factual allegations relating to the alleged infringement [1] …

---

[1] Case 6:21-cv-00244-JD in *Golden v. Google LLC* "OBJECTION TO THE MAGISTRATE'S REPORT AND RECOMMENDATION: HISTORY OF PLAINTIFF'S RELATED CASES" Date Filed 04/22/21 Dkt. No. 18 "The purpose of Plaintiff's claim charts is to determine if any infringement has occurred. For infringement analysis & litigation, Plaintiff's claim charts are designed to help confirm that each and every limitation of the claim is present in a product, service, or standard. For validity analysis in litigation, Plaintiff's claim charts are designed to help confirm the novelty of a claim relative to prior art. Plaintiff's claim construction and claim interpretation charts included in this Complaint, shows patent specifications and/or technical literature citations with proper interpretations of the language of a claim."

RECEIVED

MAR 03 2022

United States Court of Appeals
For The Federal Circuit

"[I]n the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation … In light of the vague conclusory allegations in the complaint in this action and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous." "IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with prejudice and without the issuance of service of process." In the United States District Court for the District of South Carolina—Greenville Division, in *Larry Golden v. Google LLC*, Case 6:21-cv-00244-JD Date Filed 11/02/21 Entry Number 21.

## STATEMENT MADE TO THE APPELLATE COURT

Plaintiff-Appellate has devoted 20 years to servicing his country by way of offering strategics in the form of economic stimulus packages to restore our Nation's economy after the 9/11 attacks.

Plaintiff-Appellate spent 5 years (2002-2007) describing and explaining to government the technology [products] needed for assembly [product grouping]; to successfully achieve the desired outcome of the economic stimulus packages. (e.g., through e-mail correspondence, read-ahead documents, request for information,

request for proposals, DHS visits, SBIR road tours, industry day conference, symposiums, phone conversations, letters, implied-in-fact contracts, etc.)

The Department of Homeland Security issued its first 'request for proposal' for the assembly of Plaintiff-Appellant's technology in 2007 (*DHS S&T Cell-All Ubiquitous Biological & Chemical Sensing; BAA07-10*).

Plaintiff-Appellant responded to the request for proposal and reminded the DHS that Plaintiff-Appellant has the technology they were seeking patented. The DHS awarded contracts to Apple, Samsung, LG, & Qualcomm in 2008 for the assembly of Plaintiff-Appellant's inventions covered in United States patents.

Plaintiff-Appellant initially intended to file the first case against the government in 2013 under Section 1491 Tucker Act; "Government "Taking" of Private Property Under the Fifth Amendment Clause of the United States Constitution, without paying just compensation.[2] In 2014 the COFC stayed the "takings" claim and ordered the parties to move forward on the infringement.

---

[2] *Supreme Court opinion from the late nineteenth century: Nothing in this history suggests that personal property was any less protected against physical appropriation than real property. As this Court summed up in James v. Campbell, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."*

Plaintiff-Appellant won't go into all of dirty and under handed things the COFC, DHS, DOJ, and SCDC has done, and is still doing to prejudice my cases, because it is known, or should be known, their behavior is most likely because Plaintiff-Appellant is an African American Inventor.

Plaintiff-Appellant claims he is the Inventor of the CMDC device (i.e., smartphone or new and improved cell phone). Plaintiff-Appellant believes the Courts are basing their "frivolous" theory on "*Blacks are only two-third human beings and is therefore incapable of inventing*".

Plaintiff-Appellant's cases could have been settled years ago. All the government and any of the defendants in any of the cases pending needed to do is present evidence that any one of them invented the smartphone or new and improved cell phone.

Instead of the government and the defendants in the cases pending, fail to present evidence that at least one of them holds the patent(s) for the smartphone or new and improved cell phone. The Trial Court and government have spent years accusing Plaintiff-Appellant of presenting complaints that exceeds the page limit, enhancing the complaints, disobeying court orders, not presenting enough factual allegations, an antitrust case that is really an infringement case, an infringement case that is duplicative of a pending case, trying to circumvent previous dismissals, government agencies (DHS & DOJ) not *persons* qualified to petition the PTAB for

*inter pates review*, presenting references in an IPR trial that do not antedate Plaintiff-Appellant's patents; and, of course, the case is *frivolous* because no African American could have possibly invented the smartphone.

It is not by chance the government and third-party contractors (Apple, LG, Samsung, & Qualcomm) developed and assembled the smartphone. They followed my instructions and specifications for the CMDC device (smartphone) to the letter. Google duplicated the process and is now being protected from liability.

We all know that the likelihood of the government and any of the defendants in any of the cases pending can present evidence that any one of them invented the smartphone or new and improved cell phone, is highly improbable because the defendants are paying Qualcomm 5% royalty on each smartphone sold. Charging royalties based on the price of a handset is unreasonable and contrary to US law. [3]

---

[3] Judge Lucy Koh of the US District Court of the Northern District of California in her decision in *Federal Trade Commission v Qualcomm Incorporated* (5:17-cv-0220); determined that charging royalties based on the price of a handset was unreasonable and contrary to US law… Under the supply agreement, the handset makers pay a per-chip price to buy the chips, but under the SULA, the handset makers pay royalties of 5% on the price of each phone sold, regardless of whether a Qualcomm chip is used. Plaintiff-Appellant believes Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition… The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said that all violations of the Sherman Act also violate the FTC Act. (Qualcomm does not own the patent(s) for the smartphone or improved cell phone)

## THE PARTIES

Plaintiff-Appellant Larry Golden is a citizen of South Carolina and has a principal place of business and residence at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

On information and belief, the Defendant-Appellee Google is incorporated in the State of Delaware with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043 and does business in this judicial district by, among other things, committing jointly, directly, and/or indirectly the tort of literal patent infringement or infringement under the "doctrine of equivalents" giving rise to this complaint. Google may be served at its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

Google LLC is one of the largest technology companies in the world and conducts product sales, and online search operations in the District of South Carolina. Google LLC directly and/or indirectly distributes, markets, offers to sell, sells, and/or imports the infringing Google Pixel Series of smartphones and Google Android Operating Systems.

## HISTORY

According to the United States District Court—District of South Carolina: Information on Representing Yourself in a Civil Action (Non-Prisoner) Revised

December 1, 2020; Notice to *Pro Se* Parties: "[w]henever a civil case is brought by a prose party, the judges of this court outline proper procedure so that the *pro se* party will not be deprived of a fair opportunity to present his or her case", *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

From the very first filings in the Trial Court, the Judges' intent was to dismiss Plaintiff-Appellant's case(s). The Court erred in dismissing Plaintiff-Appellant's initial complaint three times as a duplicate of a related case filed in the Court of Federal Claims. The CAFC determined the Case was not a duplicate.

When the Plaintiff-Appellant amended and refiled in the same case in the SCDC court. The SCDC & CAFC dismissed the case without prejudice. The Court erred in rejecting Plaintiff-Appellant's amended complaint.

When the Plaintiff-Appellant filed a new case against the same defendant's, the Court erred in not allowing Plaintiff-Appellant's complaint to be docketed, because the Court determined the complaint exceeded the minimum page count of 35 pages.

When Plaintiff-Appellant submitted the 34-page complaint, the Court dismissed the case for not alleging enough factual allegations. The District Judge overturned the 35-page requirement, but did nothing to help Plaintiff-Appellant before dismissing the case. *See Platsky v. C.I.A.* 953 F.2d. 25, "[c]ourt errs if court

dismisses the *pro se* litigant pleadings without instruction of how pleadings are deficient and how to repair pleadings".

When the Plaintiff-Appellant filed a cause of action of "Antitrust Law Violations", the case was changed by the Court to "patent infringement" and dismissed for the same reasons the Court dismissed the previously filed patent infringement case. The District Judge overturned the patent infringement cause of action, but did nothing to help Plaintiff-Appellant before dismissing the case; "[t]he plaintiff may combine as many claims as the plaintiff has against a defendant in one case and may sue more than one defendant in one case if the claim involves all of the defendants…" *South Carolina Judicial Branch: C. Civil Procedure in Magistrates' Courts 1. The Pleadings* …

The Court erred in dismissing Plaintiff-Appellant's case against Google as frivolous, "[t]he instant complaint seeks damages against Google for the same allegations that were dismissed as *frivolous* in Case Number 3, Case Number 4, and Case Number 5; however, it appears that this action represents Golden's attempt to re-litigate claims against Apple and/or Qualcomm and now asserts the same claims against Google."

The Court, in this current case, and all of the before mentioned cases, fail to state what makes Plaintiff-Appellant's cases "*fanciful and delusional*". A frivolous claim, often called a bad faith claim, refers to a lawsuit, motion or appeal that is

intended to harass, delay or embarrass the opposition, "[a] claim is frivolous when the claim lacks any arguable basis either in law or in fact", *Neitze v. Williams*, 490 U.S. 319, 325 (1989).

Even after *Twombly and Iqbal*, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', [e]ven if their truth seems doubtful." (quoting *Twombly*, 550 U.S. at 556).

Plaintiff-Appellant believes this case should be remanded back to the SCDC court for trial by jury. Plaintiff-Appellant also believes that because he is an African-American Inventor, who is representing himself *Pro Se*, the SCDC court judges will not allow a Black, to defend his property against Whites, in their Court.

"Malicious intent refers to the intent, without just cause or reason, to commit a wrongful act that will result in harm to another. It is the intent to harm or do some evil purpose" https://definitions.uslegal.com/m/malicious-intent/

## STANDARDS FOR REVIEW

Although Plaintiff-Appellant did not file a "Judicial Notice" during the pleading stage at the Trial Court in the following way, it is still relevant to this case:

"All officers of the court for the United States District Court for the District of South Carolina, are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of *Haines v Kerner*, 404 U.S. 519, *Platsky v. C.I.A.* 953 F.2d. 25, and *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000) relying on *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992), "*United States v. International Business Machines Corp.*, 517 U.S. 843, 856 (1996), quoting *Payne v. Tennessee*, 501 U.S. 808, 842 (1991) (Souter, J., concurring). *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647, *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 07/25/2001).

*In re Haines*: pro se litigants (Plaintiff is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

*In re Platsky*: court errs if court dismisses the pro se litigant pleadings (Plaintiff is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings.

*In re Anastasoff*: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a

constitutional right to have their claims adjudicated according the rule of precedent.

See *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647.

See *Haines v. Kerner, Et Al*, 404 U.S. 519 (1972), which states a *Pro Se* litigant's complaint cannot be dismissed for failure to state a claim upon which relief can be granted. *Haines v. Kerner, et al* – Court's Opinion:

> "...allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Dioguardi v. Durning*, 139 F.2d 774 (CA2 1944), "...we conclude that he is entitled to an opportunity to offer proof."

Notice to *Pro Se* Parties: You are not Entitled to have Counsel Appointed to Represent You in a Civil Action … "[w]henever a civil case is brought by a pro se party, the judges of this court outline proper procedure so that the *pro se* party will

not be deprived of a fair opportunity to present his or her case." *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975)"

**SCDC "OPINION & ORDER" in *Larry Golden v. Google, LLC*, Case No: 6:21-cv-00244-JD, Date Filed 11/02/21, Entry Number 21**

*OPINION*: "Although Golden cites a district court opinion in the Central District of California (albeit not binding precedence) to support his claim that his pleadings are sufficient because he attached his patents just as the plaintiff in that case, his reliance and application of this authority misses the mark."

*ANSWER*: "Plaintiff attached a copy of the asserted patents as Exhibits A, B, & C. The attached patents satisfy the requirement of "enough factual allegations. For example, *in Incom Corp. v. Walt Disney Co*., No. 2:15-cv-03011-PSG-MRW, Dkt. 39, at *4 (C.D. Cal. Feb. 4, 2016) the Central District of California declined to dismiss a complaint that attached the asserted patent, identified the accused products by name, and generally compared the technology disclosed in the patents to the accused products. The complaint *did not identify any specific asserted claim*, but the court found that: "Plaintiff has stated a plausible claim for direct infringement by specifically identifying the Defendant's products and alleging that they perform the same unique function as Plaintiff 's patented system." The Defendant in this case is allegedly liable for infringement of the asserted patents-in-suit under 35 U.S.C. § 271.

*OPINION*: "Golden objects to the Report's recommendation of dismissal of the action in light of the claim charts he has provided in the Complaint. Upon review, however, the Report thoroughly addressed Golden's claim chart."

*ANSWER*: The Trial Court erred when the Court dismissed Plaintiff-Appellant's claim charts as being insufficient. The Charts submitted are "demonstrative charts", that when combined with the complaint and patents, are "enough factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." (*Twombly and Iqbal*). The Court erred because the Plaintiff-Appellant is not required to plead 'direct infringement of each and every element at the pleading stage.

At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (*quoting Crypto Res., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017)).

In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" *Id.* at 1350 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

The U.S. Court of Appeals for the Federal Circuit addressed the pleading requirements for patent infringement claims in *Bot M8 LLC v. Sony Corp. of Am.*,

4 F.4th 1342 (Fed. Cir. July 13, 2021) … "patentees are not required to prove their case at the pleading stage … patentees are not required to plead infringement on an element-by-element basis … a blanket element-by-element pleading standard for patent infringement, "that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal and Twombly*." *Id*. at 1352.

*OPINION*: "The chart contains the exact same language as the claim charts previously rejected by the Federal circuit, although Google Pixel 5 Smartphone appears in the far-left column instead of Apple."

*ANSWER*: Not true. The issue, is whether Plaintiff-Appellant's infringement contentions charts comply with the Court's Patent Rule 4(c):

(b) for each asserted claim, each product, process, or method that allegedly infringes the identified claim. This identification must include the name and model number, if known, of the accused product, process, or method;

*(c) a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known*;

It doesn't matter if the alleged infringing product is in the far-left column (Charts 1 & 1-A), or in any of the columns right of the far-left column (Charts 2 thru 8). What matters is where the element is found; name & model, if known.

| Apple iPhone 12 Smartphone | Patent #: 10,163,287; Ind. Claim 5 | Patent #: 9,589,439; Ind. Claim 23 | Patent #: 9,096,189; Ind. Claim 1 |
|---|---|---|---|
|  | A monitoring device comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
|  CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard). Chipset: Apple A14 Bionic (5nm). Apple iOS 14.1 Operating System (OS) | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0 A2DP, LE. NFC, GPS, A-GPS, GLONASS, Galileo, OZSS | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Face ID & Lock Disables after multiple failed attempts to open | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… |

*Chart 1*

| Google Pixel 5 Smartphone | Patent #: 10,163,287; Ind. Claim 5 | Patent #: 9,589,439; Ind. Claim 23 | Patent #: 9,096,189; Ind. Claim 1 |
|---|---|---|---|
|  | A monitoring device comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
|  CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver). Chipset: Qualcomm Snapdragon 765G. Google Android 11 Operating System (OS) |  at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable |  at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… |
| Fingerprint ID (rear-mounted) & Lock Disables after multiple failed attempts to open | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition… |

*Chart 1-A*

| Plaintiff-Appellant's [Smartphone] | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Communication, Monitoring, Detecting, & Controlling (CMDC) Device | Electronic Device | Mobile Device | Consumer Device |

*Chart 2*



Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e., computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween, comprising…

**Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone)**

**Asserted Patent Specifications**:

"In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring… computers, laptops, notebooks, PCs, and cell phones for the receipt and transmission of signals"

"Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite phones, cell phones, Universal Mobile Telecommunications System (UMTS) phones, personal digital assistants (PDAs), liquid crystal display (LCD) monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds;"

*Chart 2-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Central Processing Unit (CPU) | CPU: Octa-core (1x2.4 GHz Kryo 475 Prime & 1x2.2 GHz Kryo 475 Gold & 6x1.8 GHz Kryo 475 Silver). Chipset: Qualcomm SM7250 Snapdragon 765G 5G. Google Android 11 OS | CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard). Chipset: Apple A14 Bionic (5nm) iOS 14.1 Operating System (OS) | CPU: Octa-core (2x2.73 GHz Mongoose M5 & 2x2.50 GHz Cortex-A76 & 4x2.0 GHz Cortex-A55) – Global. Chipset: Qualcomm SM8250 Snapdragon 865 5G. Google Android 10 OS |

*Chart 3*



**Central Processing Units (CPUs) for Smartphone**

The "smartphone processor (CPU), also known as chipset, is a component that controls everything going on in your smartphone and ensures it functions correctly. You can compare it to the brain of the human body. Every action you perform on your smartphone goes straight to the processor." https://www.coolblue.nl/en/advice/smartphone-processors. html. "Unlike simpler mobile phones of the past, today's smartphones all have processors or CPUs. A smartphone CPU (central processing unit) is the brains of the entire device. Without one, no smartphone would be able to function" (smartphonedomain.com., 2021).

Example: Qualcomm often refers to the Snapdragon as a "mobile platform" (e.g., Snapdragon 865 5G Mobile Platform). Snapdragon semiconductors are embedded in devices of various systems, including Android devices (i.e., Samsung & LG). They are also used in cars and wearable devices such as Smart Watches.

Example: Qualcomm Technologies Inc. Qualcomm announced it was developing the Scorpion central processing unit (CPU) in November 2007. The Snapdragon system on chip (SoC) was announced in November 2006 and included the Scorpion processor. The Snapdragon's central processing unit (CPU) uses the ARM architecture. A single SoC may include multiple CPU cores; a Snapdragon wireless modem; and, other software and hardware to support a smartphone's global positioning system (GPS), camera, video, and audio.

*Chart 3-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Sensor for C/B/R detection | Dual cameras: 12.2 MP, f/1.7, 27mm (wide), 1/2.55", 1.4µm, dual pixel PDAF, OIS 16 MP, f/2.2, 117° (ultrawide), 1.0µm | Dual cameras: 12 MP, f/1.6, 26mm (wide), 1.7µm, dual pixel PDAF, sensor-shift OIS12 MP, f/2.4, 120°, 13mm (ultrawide) | Triple cameras: 12 MP, f/1.8, 26mm (wide), 1/1.76", 1.8µm, Dual Pixel PDAF, OIS 64 MP, f/2.0, 29mm (telephoto), 1/1.72", 0.8µm, PDAF, OIS, 1.1x optical zoom, 3x hybrid zoom |

*Chart 4*



### Camera C/B/R Sensor(s) for Smartphone

Camera Sensor for Radiological Detection: How can a cell phone detect radioactivity? Cell phones have cameras and camera sensors react to radioactivity. High energy particles strike a sensor array and register as small bright pinpoints or thin streaks of light. An app may not be as sensitive as a dedicated radiation detector, but it works well enough to alert users to dangerous levels of radiation.

Camera Sensor for Biological Detection: "In the diagnostic test, a patient sample is mixed with CRISPR Cas13 proteins (purple) and molecular probes (green) which fluoresce, or light up, when cut. Coronavirus RNA present, CRISPR proteins snip the molecular probes, whole sample to emit light. Fluorescence detected with a cell phone camera." (Image: Science at Cal).

Camera Sensor for Chemical Detection: The sensor that Rhevision and the University of California at San Diego responds to different chemicals by changing color; a single chip with many tiny pores, each respond to a different chemical; a standard cell-phone camera can resolve a picture finely enough to detect them; system relies on the phone's camera to watch the chip for color changes.

*Chart 4-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Detector for C/B/R/N detection | Best watches for the Google Pixel 5: Samsung Galaxy Watch 3 and Fitbit Sense. | Apple Watch Series 7 | Samsung Galaxy Watch4 |

*Chart 5*



Homeland Security's Smartwatch Will Detect Nuclear Bombs
https://www.popularmechanics.com/ military/research/a18161/homeland-security - smartwatch-detect-nuclear-bombs/

**Smartwatch CBR Detector for Smartphone**

To use a smartwatch as a stand-alone detection device, you need a smartphone. On the smartphone, the user installs the app that comes with the smartwatch stand-alone detection device, such as Android Wear or Apple WatchOS. By opening the accompanying app on the smartphone and turning on Bluetooth, the user can synchronize the smartwatch to function as a stand-alone detection device with the smartphone.

The US Military's Latest Wearables [Smart Watch] Can Detect Illness Two Days Before You Get Sick
https://www.defenseone.com/technology/2020/09/militarys-latest-wearables-can-detect-illness-two-days-you-get-sick/168664/

Studies reveal smartwatch biometrics can detect COVID-19 before symptoms surface: "smartwatches and other wearables measuring biometrics like heart-rate variability have the ability to detect if a person is COVID-19 positive" https://www. biometricupdate.com/202101/studies-reveal-smartwatch-biometrics-can-detect-covid-19-before-symptoms-surface

*Chart 5-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Radio-Frequency Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) | Near-Field Communications (NFC) |

*Chart 6*



MIT chemists devised a new way to wirelessly detect hazardous gases by using a simple sensor that can be read by a smartphone... [T]he researchers have demonstrated that they can detect gaseous ammonia, hydrogen peroxide, and cyclohexanone, among other gases... The new sensors are made from modified near-field communication (NFC) tags. NFC tags can be read by any smartphone that has near-field communication capability. Retrieved from: https://phys.org/news/2014-12-cheap-sensor-transmit-hazardous-chemicals.html

**Near-Field Communication (NFC) CBR Tag for Smartphone**

In November 2007, an international transportation security company, two Defense Department contractors, a container retailer, a university, and a U.S. city's bomb squad demonstrated how an RFID tag could send a signal to a detonator built from widely available, over-the-counter components. An undergraduate student spent about $20 to make the detonator. The RFID signal detonated a small amount of explosives in a container by means of a simple emission of a radio signal traveling on the approved RFID 433 MHz frequency. Officials from the Defense Department, Government Accountability Office, Department of Homeland Security and Coast Guard observed the demonstration. The office of the secretary of defense sent two observers. In the Defense Department's own words, the "Army representatives examined the device and wiring and confirm that a commercial RFID interrogator was used to 'wake up' a commercial RFID tag. When the RFID tag responded on the 433 MHz frequency, the relay closed and the blasting cap set off the explosive charge." https://www.nationaldefensemagazine.org/articles/2011/2/1/2011february-military-supply-chain-tracking-system-both-inefficient-and-dangerous

*Chart 6-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| | | | |
| Biometrics & Lock Disabling Mechanism | Fingerprint ID (rear-mounted) & Lock Disables after multiple failed attempts to open | Face ID & Lock Disables after multiple failed attempts to open | Fingerprint (under display, ultrasonic) & Lock Disables after multiple failed attempts to open |

*Chart 7*





### Fingerprint Biometric Lock Disabler for Smartphone

Security feature: After several unsuccessful log-in attempts using a passcode or fingerprint, an Android or iOS device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. The wrong pin will launch to Account Login. On an Android or Apple Phone, multiple attempts (usually five attempts or more) with an unknown or a wrong pin will go either into a delay before further attempts are allowed or the phone will allow entry using the account to unlock

### FBI Failed Attempts to Unlock Phone

The FBI recovered an Apple iPhone 5C—owned by the San Bernardino County, California government—that had been issued to its employee, Syed Rizwan Farook, one of the shooters involved in the December 2015 San Bernardino attack. The attack killed 14 people and seriously injured 22. The two attackers died four hours after the attack in a shootout with police, having previously destroyed their personal phones. Authorities were able to recover Farook's work phone, but could not unlock its four-digit passcode, and the phone was programmed to automatically delete all its data after ten failed password attempts (an anti-theft measure on smartphones).

*Chart 7-A*

| Plaintiff-Appellant's CMDC Device | Google Pixel 5 Smartphone | Apple iPhone 13 Smartphone | Samsung Galaxy S20 Smartphone |
|---|---|---|---|
| Internet | Wi-Fi 802.11 a/b/g/n/ac, dual-band, Wi-Fi Direct, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, hotspot | Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, hotspot |

*Chart 8*



The smartphone can be used as an IoT device for Personal emergency response, fitness tracking, location-based asset tracking, natural vision processing, and a Bluetooth gateway for wearable Bluetooth devices that enable many IoT monitoring apps. Also, identity verification, GPS based guidance, position/orientation awareness apps and games are well suited for smartphone-based implementation.

### Internet-of-Things (IoTs)

The Internet-connected smartphones, can directly capture and compile data from as many as 14 different sensors:
1. Accelerometer
2. GPS
3. Gyroscope
4. Magnetometer
5. Biometrics
6. Camera
7. Barometer
8. Proximity Sensors
9. Bluetooth connectivity
10. Barcode readers
11. Touchscreen sensors
12. Heart rate monitor
13. ECG
14. Haptic feedback sensors

The IoTs contain computing hardware, including processors with embedded programming telling them what to do, sensors that gather various sorts of readings (such as temperature, motion, chemical levels, heart rate and body movement) and communication hardware that can send and receive signals.

*Chart 8-A*

Charts 3-A thru 8-A are Plaintiff-Appellant's claimed inventions used to form Plaintiff-Appellant's communicating, monitoring, detecting, and controlling, (CMDC) device (Chart 2-A).

Patent Rule 4(c) does not ask for anything more than "a *chart* identifying where each element [limitation] of each asserted claim is found within each accused product, process, or method, including the name and model number, if known".

If the patent claim reads: "A CMDC device comprising: at least one central processing unit (CPU)". According to Patent Rule 4(c), the only thing Plaintiff-Appellant is required to do is identify where the CPU is found within each accused product, and include the name and model number if known (i.e., Google Pixel 5, CPU: Octa-core (1x2.4 GHz Kryo 475). Chipset: Qualcomm SM7250 Snapdragon 765G 5G; Apple iPhone 12, CPU: Hexa-core (2x3.22 GHz Avalanche + 4xX.X GHz Blizzard), Chipset: Apple A14 Bionic (5nm))

## COUNT I

### (Infringement of the '287 Patent)

Golden realleges and incorporates herein the allegations set forth in this corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of

the '287 patent. The alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '287 patent and Google is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

## COUNT II
### (Infringement of the '439 Patent)

Golden realleges and incorporates herein the allegations set forth in this corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 13, 14, 15, and

23 of the '439 patent. The alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '439 patent and Google is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

## COUNT III
### (Infringement of the '189 Patent)

Golden realleges and incorporates herein the allegations set forth in this corrected informal brief.

On information and belief, Google is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing claims 1, 2 & 3 of the '189 patent. The

alleged infringing products are: Google Pixel smartphones 3, 3XL, 3a, 3aXL, 4a, 4a(5G), and 5.

As set forth in Golden's preliminary infringement contentions that Google is making, using, offering for sale, selling and/or importing Plaintiff's CMDC device have at a minimum directly infringed the '189 patent and Google is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Google have caused damage to Golden, which infringement and damage will continue unless and until Google is enjoined.

The alleged infringement of Google identified in the Trial Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a preliminary injunction is warranted and such a remedy would be in the public interest.

Respectfully submitted,

Larry Golden, Plaintiff, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

AO 450 (SCD 04/2010)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of South Carolina

|                       |     |                  |                  |
|-----------------------|-----|------------------|------------------|
| Larry Golden,         | )   |                  |                  |
| *Plaintiff*           | )   |                  |                  |
| v.                    | )   | Civil Action No. | 6:21-cv-00244-JD |
| Google LLC,           | )   |                  |                  |
| *Defendant*           | )   |                  |                  |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

■ the Court adopts the Report and Recommendation.  Plaintiff's Complaint is dismissed with prejudice and without the issuance of service of process.

This action was *(check one)*:

❏ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❏ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■ decided by the Honorable Joseph Dawson, III

Date:   November 3, 2021

*ROBIN L. BLUME, CLERK OF COURT*

s/Rob Weber
*Signature of Clerk or Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Golden, | ) | Case No.: 6:21-cv-00544-JD-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Google, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States

Magistrate Kevin F. McDonald ("Report and Recommendation" or "Report"), made in accordance

with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1]

Plaintiff Larry Golden ("Golden" or "Plaintiff"), proceeding *pro se*, filed this Complaint alleging

patent infringement claims against Google, LLC ("Google" or "Defendant").  (DE 1.)

Specifically, Golden asserts that Google has infringed on the following patents: 10,163,287

('287 patent); 9,589,439 ('439 patent); 9,096,189 ('189 patent).  (DE 1; 1-1; 1-2, 1-3.)  These

patents are entitled "multi sensor detection, stall to stop and lock disabling system" [DE 1; 1-1; 1-

2; 1-3.)  The patents appear to involve technology that can be used to detect explosives/radiation

and then disable vehicles or other equipment wherein the explosives/radiation are detected.  The

Plaintiff's complaint alleges infringement of each patent by Google in formulaic recitations of the

elements of patent infringement.  (DE 1.)  For relief, Golden seeks a declaratory judgment that

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final
determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-
71 (1976).  The Court is charged with making a de novo determination of those portions of the Report and
Recommendation to which specific objection is made.  The Court may accept, reject, or modify, in whole
or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28
U.S.C. § 636(b)(1).

RECEIVED

MAR 03 2022

United States Court of Appeals
For The Federal Circuit

Google has infringed on his patents, a permanent injunction enjoining the infringing activity, as well as money damages.  (DE 1, p. 29.)

This Court possesses the inherent authority to review the *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject to the pre-screening provisions of 28 U.S.C. § 1915. See Mallard v. U.S. Dist. Ct., 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (finding that "frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." (citations omitted)).

Accordingly, on April 9, 2021, the Magistrate Judge issued the Report given his initial review of the pleadings.  The Report recommended summary dismissal of the complaint with prejudice and without issuance of service of process or leave to amend his complaint.  The Report further recommended that this Court consider the entry of sanctions in the amount of $400.00 against Golden because he has continued to file frivolous litigation in this Court.[2] (DE 14.)  In support of the Magistrate's recommendation, the Report took judicial notice that the instant matter represents Golden's sixth unsuccessful action regarding his patents (and infringing actions).  See Golden v. Apple, Inc., et al., C/A No. 6:20-cv-04353-JD (D.S.C.) ("Case Number 5"); Golden v. Apple, Inc., et al., C/A No. 6:20-cv-02270-JD (D.S.C.) ("Case Number 4"); Golden v. Apple Inc.,

_____

[2]    Although this action represents Golden's fourth frivolous action based upon alleged patent infringement (and sixth case overall) and the Report recommends that this Court sanction Golden $400.00, this Court declines to order sanctions at this time.  However, in the event Golden attempts to file another frivolous action in this Court, the Court will consider the imposition of sanctions as warranted.

et al., C/A No. 6:19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020), aff'd C/A No. 20-

1508, --- F. App'x ---, 2020 WL 5240656 (Fed. Cir. Sept. 3, 2020) ("Case Number 3"); Golden v.

United States, C/A No. 1:19-cv-00104-EGB (Fed. Cl.), dismissal aff'd 955 F.3d 981 (Fed. Cir.

2020) ("Case Number 2"); Golden v. United States, C/A No 1:13-cv-00307- SGB, stayed pending

patent review, at doc. 186 (Fed. Cl.) ("Case Number 1"); and In re Patent Number RE 43,990,

https://portal.uspto.gov/pair/PublicPair# (choose patent number, enter RE43990, and then click

Image File Wrapper) (last visited September 26, 2021), petition denied June 25, 2020. The instant

complaint seeks damages against Google for the same allegations that were dismissed as frivolous

in Case Number 3, Case Number 4, and Case Number 5; however, it appears that this action

represents Golden's attempt to re-litigate claims against Apple and/or Qualcomm and now asserts

the same claims against Google.

Accordingly, the Report recommend dismissal of Plaintiff's complaint because *inter alia*

the Plaintiff's complaint contains a lengthy history of his prior actions in this Court, various cell

phone statistics, a description of the development of the android operating system, and

specifications for various Google phones, but contains few factual allegations relating to the

alleged infringement. (See DE 14, p. 8.) Golden filed an objection to the Report on April 22, 2021

(DE 18); however, to be actionable, objections to the Report and Recommendation must be

specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial

review, including appellate review, if the recommendation is accepted by the district judge. See

United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has

expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a

magistrate's report enables the district judge to focus attention on those issues -- factual and legal

-- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co.,

416 F.3d 310, 315 (2005) (citing <u>Thomas v. Arn</u>, 474 U.S. 140 (1985) (emphasis added)).  In the absence of <u>specific</u> objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation.  <u>See</u> <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).

Plaintiff makes the following "objections"[3] to the Report, which the Court will discuss *seriatim*.  First, Golden objects to the Report's recommendation of dismissal of the action in light of the claim charts he has provided in the Complaint.  Upon review, however, the Report thoroughly addressed Golden's claim chart.  The chart contains the exact same language as the claim charts previously rejected by the Federal circuit, although Google Pixel 5 Smartphone appears in the far left column instead of Apple.  (DE 14, p. 8.)  For example, the chart copies previously submitted charts alleging patent infringement (albeit by Google in lieu of other defendants) of independent claim 5 of the '287 patent; independent claim 23 of the '439 patent; and independent claim 1 of the '189 patent.  (DE 1, pp. 23-29.)  These charts and allegations of infringement were specifically rejected by the Federal Circuit Court of Appeals because they contained "a dizzying array of disorganized assertions" "disingenuously using the words of the claims to generally describe cryptically identified structures." <u>Golden</u>, 819 F. App'x at 931 (citing <u>Golden</u>, C/A No. 6:19-cv-02557, at DE 16-14).  In light of the foregoing, this Court overrules this objection.

Next, Golden objects to the Report's finding that the Complaint does not include a short and plain statement of his claims in light of <u>InCom Corp. v. Walt Disney Co.</u>, No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016), because Golden

---

[3]    Golden purportedly objects to the Court's lack of consideration of two (2) DVD's included with his Complaint and five (5) response letters from members of the Executive and Legislative branches of government.  (DE 18, p. 7.)  However, there do not appear to be any such attachments to the Complaint; and therefore, the Court overrules this "objection."

included claim charts that illustrate the infringing devices, provide notice to the Defendant, and provide enough factual allegations. (DE 18, p. 8.) However, Golden offers no additional facts regarding the same. Simply naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the "plausibility" standard set forth in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although Golden cites a district court opinion in the Central District of California (albeit not binding precedence) to support his claim that his pleadings are sufficient because he attached his patents just as the plaintiff in that case, his reliance and application of this authority misses the mark. See InCom Corp. v. Walt Disney Co., No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016) (where the district court found that plaintiff's amended complaint did more than name a product and baldly conclude that it infringes plaintiff's patent, but that plaintiff attached the patents and described *inter alia* how "its Attendance Tracking System uses RFID technology and ID badges to track human presence in large volumes."). Even applying InCom as purported by Golden, Golden's amended complaint does not (among other things) describe specific systems developed and manufactured by Google that are like the subject patents and how the systems perform the same unique function as Golden's system or assert facts regarding the availability of his technology prior to his invention. In light of the vague conclusory allegations in the complaint in this action and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous.

Although this Court agrees with the Report that Plaintiff's amended complaint should be dismissed with prejudice because it is frivolous, the Court declines to impose sanctions at this time. Furthermore, the Court finds Golden's remaining objections to be non-specific and/or moot and, therefore, overrules them.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation as modified and incorporates it herein.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint is dismissed with prejudice and without the issuance of service of process.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
November 2, 2021

## NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.



PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



PS10001000006

EP13F
OD: 12

FOR DOMESTIC AND INTERNATIONAL USE
PLACE MAILING LABEL HERE

PRIORITY MAIL EXPRESS
FLAT RATE ENVELOPE
POSTAGE REQUIRED





U.S. POSTAGE PAID
PME 1-Day
GREENVILLE, SC
29606
MAR 02 '22
AMOUNT

1007          20439

**$26.95**

R2303S102300-09



UNITED STATES POSTAL SERVICE®    PRIORITY MAIL EXPRESS®

EI 036 964 514 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)          PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF ROAD
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

**TO: (PLEASE PRINT)          PHONE ( )**

UNITED STATES COURT OF APPEALS FOR
THE FEDERAL CIRCUIT
CASE NO: 22-1267
717 MADISON PLACE, NW
WASHINGTON, DC 20439
ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.



**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.     Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☒ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code     Scheduled Delivery Date (MM/DD/YY)     Postage
29606           03 03 22                                $26.95

Date Accepted (MM/DD/YY)   Scheduled Delivery Time   Insurance Fee   COD Fee
03 02 22                    ☒ 6:00 PM                  $               $

Time Accepted   ☐ AM ☒ PM     Return Receipt Fee   Live Animal Transportation Fee
442                            $                     $

Special Handling/Fragile   Sunday/Holiday Premium Fee   Total Postage & Fees
$                          $                            $

Weight   ☒ Flat Rate   Acceptance Employee Initials   $26.95
  lbs.   ozs.                    MW

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)  Time   ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)  Time   ☐ AM ☐ PM   Employee Signature

LABEL 11-B, MAY 2021



PEEL FROM THIS CORNER